DAYLE ELIESON
United States Attorney
SUE FAHAMI
Nevada State Bar #5634
Assistant United States Attorney
400 South Virginia Street, Suite 900
Reno, Nevada  89501
(775) 784-5438
sue.p.fahami@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:17-cr-00116-LRC-WGC |
| Plaintiff, | |
| v. | **GOVERNMENT'S OPPOSITION IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |
| REFUGIO PALOMAR-SANTIAGO, | |
| Defendant. | |

The United States of America, by and through DAYLE ELIESON, United States Attorney for the District of Nevada, and SUE FAHAMI, Assistant United States Attorney, submit its opposition in response to Defendant's Motion to Dismiss ("Mot."), ECF No. 23. This response is timely.

## I.    FACTS.

Defendant claims that he did not receive a notice specifying the place, date or time for his removal hearing that took place on June 10, 1998. Defendant attaches a Notice to Appear (NTA), dated April 14, 1998, that lists the place as "TO BE CALENDARED BY EOIR" and the date and time "TO BE SET." *See* Def's Mot. Ex. B and Government's Exhibit 1 which contains the second page of the NTA. Defendant fails to mention that on May 20, 1998 he was served, in person, with a Notice of

Hearing listing the place, date and the start time of 8:30 a.m. *See* Exhibit 2. On June 10, 1998, Defendant appeared for his removal proceedings. He was ordered removed. *See* Exhibit 3.

According to a Custody Redetermination Questionnaire dated 5-20-1998 and a Notice of Entry of Appearance as Attorney Representative Before the Office of the Immigration Judge Executive Office for Immigration Review, form EOIR-28, dated May 4, 1998, Defendant was represented by counsel for the purpose of deportation proceeding. *See* Exhibits 4 and 5. It is unclear from the A-file whether Defendant's attorney was present at Defendant's June 10, 1998 hearing. What is clear is that Defendant was advised of his right to counsel and did have counsel as of May 4, 1998. See Exhibits 1-2 and 4-5. Defendant was also served with a Notice to Appear on March 27, 1998. See Exhibit 6.

Defendant relies on a form used by Immigration and Customs Enforcement, the I-862, to claim that he did not receive notice of a place, date and time of his removal hearing in Los Angeles. *See* Def's Mot. Ex. B. It would be inappropriate, however, for an Immigration Enforcement Agent (IEA) to provide a date and time on an immigration court notice because the IEA is not an arm of the immigration court and cannot speak on behalf of the court. It is the court that provides notice specifying the date and time of removal hearings. The court does so on a different form – the form Defendant personally received on May 20, 1998, setting his removal hearing on June, 10 1998, at 8:30 a.m. *See* Exhibit 2.

At this 8:30 a.m. hearing on June 10, 1998, Defendant did not make application for relief from removal. *See* Exhibit 3.

**II.    STANDARD FOR COLLATERAL CHALLENGE IS CHALLENGED.**

Defendant is ineligible for relief because he failed to prove that he met the requirements of 8 U.S.C. § 1326(d)(1) and (d)(2)—that he exhausted administrative remedies and was deprived of the opportunity for judicial review.

The government acknowledges that under current Circuit precedent, Defendant is excused from satisfying these requirements if he can show that the entry of the deportation order was fundamentally unfair under § 1326 (d)(3). *See United States v. Ochoa*, 861 F.3d 1010, 1020 (9th Cir. 2017); *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014). The government accordingly makes this argument to preserve the opportunity to seek *en banc* or certiorari review of this issue.

As the Supreme Court long ago held, error does not establish exhaustion: "[o]bviously, the rules requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless[.]" *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51−52 (1938). "[I]t is a well-known axiom of administrative law that 'if a petitioner wishes to preserve an issue for appeal, he must first raise it in the proper administrative forum.'" *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (quoting *Tejada−Mata v. INS*, 626 F.2d 721, 726 (9th Cir. 1980)).

"'[W]here Congress specifically mandates it,' exhaustion is not merely appropriate but 'required.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Thus, Congressional intent — grounded in statutory text — is of "paramount importance" to any exhaustion inquiry. *McCarthy*, 503 U.S. at 144. As all three members of the *Ochoa* panel recognized, the Ninth Circuit's precedent interpreting § 1326(d) has "strayed increasingly far from the statutory text," as well as from the interpretations of other Circuits. 861 F.3d at 1018, 1023−24 (Graber, J., concurring; joined by McKeown and Lynn, JJ.); *accord United States v. Morales*, 634 Fed. Appx. 606, 608 (9th Cir. 2016) (Callahan, J., dissenting).

Under the plain language of the statute, a defendant must "demonstrate[]" that he "exhausted any administrative remedies that may have been available" and that deportation proceedings "improperly deprived him of the opportunity for judicial review." *See Ochoa*, 861 F.3d at 1019−20. As at least six other Circuits recognize, *see id.*, this language forecloses collateral attacks absent a specific demonstration of exhaustion and deprivation of judicial review. *See, e.g., United States v. Soto−Mateo*,

3

1    799 F.3d 117, 121 (1st Cir. 2015); *United States v. Rivera−Nevarez*, 418 F.3d 1104, 1109 (10th Cir.

2    2005).

3            Defendant did not satisfy his statutory burden here. The record demonstrates that he did not

4    exhaust his administrative remedies, nor was he improperly deprived of the opportunity for judicial

5    review.  He was before an immigration judge on June 10, 1998, where he made no application for relief

6    from removal. *See* Exhibit 2.

7            Defendant argues that his prior felony, a conviction under Section 23513 of the California

8    Vehicle Code does not constitute an aggravated felony and therefore, he was prevented from seeking

9    meaningful review of his removal proceedings. However, Defendant does not cite to any such evidence

10   from the hearing. Defendant accuses the immigration judge of misleading him during the hearing, even

11   though he states that there is no information in the A-file about the hearing. *See* Def's Mot. p 5.

12   Defendant states that "it appears the immigration judge determined that Mr. Palomar-Santiago had

13   committed an aggravated felony by virtue of his 1991 conviction under Section 23513 of the California

14   Vehicle Code." *Id*.

15           Defendant received sufficient notice of the removal hearing, in that notice he was advised of

16   certain rights, including the right to be represented at the hearing and in fact had representation as of

17   May 4, 1998, and May 20. 1998. *See* Exhibits 2, 4-5. At his hearing on June 10, 1998, Defendant did not

18   make application for relief from removal. *See* Exhibit 3.

19   **III.    THE IMMIGRATION COURT PROPERLY ORDERED DEFENDANT'S REMOVAL**

20           **BASED ON LEGALLY SUFFICIENT NOTICE.**

21           Regarding Defendant's lacking jurisdiction argument on grounds of a suitable notice to appear,

22   Defendant misstates the *Pereira v. Sessions* decision, 138 S. Ct. 2105 (2018).  There is a recent decision

23   directly on point to this case, 27 I&N Dec. 441 (BIA 2018) Interim Decision #3935, *Matter of German*

24   *Bermudez-Cota*, Aug. 31, 2018, United States Department of Justice Executive Office for Immigration

Review Board of Immigration Appeals (BIA), rejecting the extension of *Pereira* to the same extent Defendant seeks today. As in *Matter of German Bermudez-Cota*, Defendant's claim here is a post-removal challenge, which is much different from the issue in *Pereira* as to the "stop-time" rule for a cancellation of removal.  *Matter of German Bermudez-Cota* holds that immigration judges have jurisdiction in removal proceedings even where the notice to appear contains a *Pereira* deficiency. *Id.* Specifically, the BIA held that a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an immigration judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229(a) (2012), so long as a notice of hearing specifying this information is later sent to the alien. *Id.*  This is precisely what occurred in this case.

Pereira, meanwhile, involved a distinct set of facts. Unlike the alien in that case, the Defendant here was properly served with both a notice to appear *and* a subsequent notice of hearing. The latter specified the time and place of his hearing, and he attended this hearing. Although the Court stated that a notice to appear that does not inform an alien when and where to appear for removal proceedings is not a "notice to appear" under section 239(a), it explained that this was so because "[c]onveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." *Pereira*, 138 S. Ct. at 2115. The Defendant in this case clearly was sufficiently informed to attend his hearing.

Defendant is not seeking cancellation of removal, and the "stop-time" rule is not at issue, so *Pereira* is distinguishable. The Court specifically stated multiple times that the issue before it was "narrow" and that the "dispositive question" was whether a notice to appear that does not specify the time and place at which proceedings will be held, as required by section 239(a)(1)(G)(i), triggers the "stop-time" rule for purposes of cancellation of removal. *Id.* at 2110, 2113. Had the Court intended to issue a holding as expansive as the one advanced by the respondent, presumably it would not have

1    specifically referred to the question before it as being "narrow." *See Chafin v. Chafin*, 568 U.S. 165, 172

2    (2013) (providing that the Federal courts do not give advisory opinions, "advising what the law would

3    be upon a hypothetical state of facts" (citation omitted) (internal quotation mark omitted)). Nor would

4    the Court have repeatedly emphasized that the dispositive question was whether a document that fails to

5    specify the time and place of proceedings triggers the "stop-time" rule. Significantly, the Court did not

6    purport to invalidate the alien's underlying removal proceedings or suggest that proceedings should be

7    terminated. In fact, the Court remanded the matter for "further proceedings." *Id.*

8         Defendant's argument finds no support in the Immigration and Nationality Act, which does not

9    address when or how jurisdiction vests with the immigration court.  That issue is, rather, addressed by

10   regulations which establish a comprehensive framework regarding what document must be filed with the

11   immigration court before its jurisdiction is engaged, and what the contents of that document must be.

12   *See* 8 C.F.R. §§ 1003.14, 1003.15.  The Notices to Appear (NTA) that were filed in Defendant's own

13   case comply with these regulatory requirements, *Compare* Def's Mot. Ex. B and Government's Ex 1

14   *with* 8 C.F.R. § 1003.15, and thus the immigration court properly exercised jurisdiction over the

15   Defendant in the course of adjudicating the issues of removability and relief from removal. On May 20,

16   1998, Defendant received a Notice of Hearing from the Immigration Court specifying June 10, 1998, at

17   8:30 a.m. for his removal hearing.  *See* Exhibit 2.

18        Contrary to this straightforward resolution of the issue, Defendant contends that *Pereira v.*

19   *Sessions* dictates a different result.  On Defendant's argument, *Pereira* stands for the broad proposition

20   that any NTA that omits the time and place is defective for any and all purposes for which such Notice is

21   required under the INA and its implementing regulations.  But *Pereira* dealt only with a narrow issue of

22   statutory construction relating to whether the so-called "stop-time" rule could be triggered by an NTA

23   omitting the time and place of the initial hearing.  Resolution of that issue revolved around two statutory

24   provisions, neither of which is directly implicated by the issue presented here.  In fact, this case turns

6

entirely on the *regulatory* framework that the Attorney General has enacted to govern removal

proceedings under Congress's broad delegation of authority to him to "establish such regulations * * *

as [he] determines to be necessary for" the functioning of the Executive Office for Immigration Review

and the immigration judges that exercise his delegated authority.  *See* 8 U.S.C. §§ 1103(g)(1) & (2).

*Pereira* thus does not mandate remand and termination in cases such as Defendant's, and even if that

decision *were* relevant in construing "Notice to Appear" in this distinct context, nothing in *Pereira*

forecloses a later-served Notice of Hearing, containing the time and place of the removal proceeding,

from "completing" the statutorily required notice.

### A.      The Immigration Court was Properly Vested with Jurisdiction in this Case.

The INA provides that "[a]n immigration judge shall conduct proceedings for deciding the

inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1).  To assist the immigration judge in

the discharge of this obligation, the INA also gives the immigration judge broad authority to conduct the

proceeding, 8 U.S.C. § 1229a(b)(1), while providing flexibility in the form that proceeding may take, 8

U.S.C. § 1229a(b)(2)(A).  Nowhere in Section 1229a did Congress address when or how jurisdiction

vests with the immigration court.

The INA also provides that "[i]n removal proceedings under section 1229a [], written notice (in

this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal

service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any),

specifying" certain information, including, *inter alia*, the factual allegations and charge of removability

against the alien, the nature of the proceeding and legal authority under which it is conducted, and "[t]he

time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(A)—(D), (G)(i).  By its

terms, however, this section refers only to a notice provided to the alien, 8 U.S.C. § 1229(a)(1) ("written

notice * * * shall be given in person *to the alien*"); nothing in Section 1229 directs that such notice must

be filed with the immigration court in order to vest jurisdiction with the agency, and no other subsection

7

1  of the statute provides any mechanism or framework for the vesting of jurisdiction with the immigration

2  court.[1]

3      The issue of when and how jurisdiction vests with the immigration court is addressed not by

4  statute, but by regulation.  Congress, through the INA, expressly conferred upon the Attorney General

5  the authority and responsibility to conduct removal proceedings, 8 U.S.C. § 1229a(a), as well as the

6  authority to "establish such regulations * * * as [he] determines to be necessary for carrying out" his

7  responsibilities under the INA, 8 U.S.C. § 1103(g)(2).  Pursuant to that statutory delegation of authority,

8  the Attorney General established a comprehensive framework governing immigration court proceedings,

9  *see generally* 8 C.F.R. Ch. V, Subch. A, Pt. 1003, Subpt. C (Immigration Court—Rules of Procedure),

10  including when and how jurisdiction vests with the immigration court.  This framework is entitled to

11  substantial deference on review under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,

12  467 U.S. 837, 843 (1984) ("The power of an administrative agency to administer a Congressionally

13  created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap

14  left, implicitly or explicitly, by Congress.").

15      "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging

16  document is filed with the Immigration Court by the" Department of Homeland Security.  8 C.F.R. §

17  1003.14(a).  For proceedings "initiated after April 1, 1997," such as those of Defendant, the charging

18  document is defined, by regulation, to "include a Notice to Appear, a Notice of Referral to Immigration

19  Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."  8 C.F.R. § 1003.13.

20  The regulation *does not* cross-reference the statutory definition of "Notice to Appear," found at 8 U.S.C.

21

22

23

24

---

[1] In fact, there is no reason to believe that the statutory definition of "Notice to Appear" applies *except* insofar as it is referenced or incorporated in other provisions of the statute, such as the stop-time rule, 8 U.S.C. § 1229b(d)(1).

§ 1229(a)(1).  Rather, the regulations direct the necessary contents of an NTA for purposes of vesting jurisdiction with the immigration court.  *See* 8 C.F.R. §§ 1003.15(b) & (c).  That notice must include:

(1)    The nature of the proceedings against the alien;
(2)    The legal authority under which the proceedings are conducted;
(3)    The acts or conduct alleged to be in violation of law;
(4)    The charges against the alien and the statutory provisions alleged to have been violated;
(5)    Notice that the alien may be represented, at no cost to the government by counsel or other representative authorized to appear pursuant to 8 C.F.R. § 1292.1;
(6)    The address of the Immigration Court where [DHS] will file the Order to Show Cause and Notice to Appear; and
(7)    A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.

8 C.F.R. § 1003.15(b).  This list largely duplicates the statutory definition of "Notice to Appear," *see* 8 U.S.C. § 1229(a)(1)(A)—(F), but does not include any reference to the time and place of the initial hearing, *compare* 8 C.F.R. § 1003.15(b), *with* 8 U.S.C. § 1229(a)(1)(G)(i).  The contents of a "Notice to Appear for removal proceedings" must also include additional information, including the "alien's name and any known aliases," his or her address, "[t]he alien's registration number," the alleged nationality and citizenship of the alien, and "[t]he language that the alien understands."  8 C.F.R. § 1003.15(c).  The inclusion of the information contemplated by Section 1003.15(b) is mandatory, while the "[f]ailure to provide" all of the information under Section 1003.15(c) "shall not be construed as affording the alien any substantive or procedural rights."  8 C.F.R. § 1003.15(c).

Here, the NTAs served on Defendant, and filed with the immigration court, contained all of the information required by 8 C.F.R. § 1003.15(b).  *Compare* Def's Mot. Ex. B and Government's Exhibits 1 and 6 *with* 8 C.F.R. § 1003.15(b) (listing required information).  Although the notices did not include the date and time of Defendant's removal hearing, that information is *not* required by the regulation and is *not* a prerequisite to the immigration court being properly vested with jurisdiction to conduct the removal proceeding.  *See generally* 8 C.F.R. § 1003.14(a), §§ 1003.15(b) & (c).  And this framework is

1   not contrary to the statute itself.  No provision of the INA addresses when or how jurisdiction vests with

2   the immigration court, nor does any provision *foreclose* the Attorney General's exercise of his authority

3   to condition the vesting of jurisdiction on the filing of a Notice to Appear that omits some of the

4   information Congress, elsewhere in the statute, required to be provided to the alien for other purposes.

5   In such circumstances, the Attorney General's promulgation of this regulatory framework is

6   unquestionably permissible and entitled to deference on review.  *See*, *e.g.*, *Vermont Yankee Nuclear*

7   *Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 543 (1978) ("this much is absolutely

8   clear.  Absent constitutional constraints or extremely compelling circumstances, the administrative

9   agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable

10  of permitting them to discharge their multitudinous duties."); *id.* at 548-59 (courts should engaged in

11  limited "review and not stray beyond the judicial province to explore the procedural format or to impose

12  upon the agency its own notion of which procedures are 'best' or most likely to further some vague,

13  undefined public good.").

14      Defendant was served with two Notices to Appear that complied with the regulatory framework

15  that governs the commencement of removal proceedings.  Defendant was also served in person on May

16  20, 1998, with a Notice of Hearing for his removal hearing set for June 10, 1998, at 8:30 a.m. before that

17  Court. *See* Exhibit 2.  Defendant's proceedings were thus conducted under proper authority.

18                    **B.    *Pereira* does not Mandate a Different Result.**

19      Defendant makes no serious argument that the Notices to Appear filed in his case failed to

20  comply with 8 C.F.R. §1003.15, and as the record establishes, no such argument could be made.

21  Defendant argues, rather, that the Supreme Court's recent decision in *Pereira* entails the result that *any*

22  NTA that lacks all of the information required under 8 U.S.C. § 1229(a)(1) is defective for *all* purposes.

23  This absurd conclusion finds no support in the issue resolved by the Supreme Court, its reasoning, or its

24  judgment.

At the threshold, the logic of the decision is contrary to Defendant's own position and in fact *supports* the assertion that the immigration court was vested with jurisdiction in this case.  In *Pereira*, the Supreme Court conducted a two-step inquiry, reviewing the interplay between a statutory provision relating to the occurrence of a specific event (the stop-time rule's cutting off the accrual of continuous physical presence), and the triggering mechanism for that event (service of a statutorily compliant Notice to Appear).  *See Pereira*, 138 S. Ct. at 2114-2117.  The statutory definition of "Notice to Appear" supplied the clear answer to when the stop-time rule could apply—only upon the service of notice that included time and place information as required by Section 1229(a).  *See id.* at 2114 ("based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that * * * 'specif[ies]' the 'time and place' of the removal proceedings.").

The regulatory provisions at issue here are structured similarly, and likewise provide a plain answer to the question presented.  The event this case is concerned with is the vesting of jurisdiction with the immigration court under 8 C.F.R. § 1003.14, and the triggering mechanism for that event is service of a charging document that complies with the definitional requirements of the regulation, 8 C.F.R. §§ 1003.13, 1003.15(b) & (c).  Under the logic of *Pereira*, 8 C.F.R. §§ 1003.15(b) and (c) supply the plain answer to when jurisdiction vests with the immigration court—when a relevant charging document (including a Notice to Appear) is filed, so long as that document contains the information required by the regulations.

At worst, however, *Pereira* is distinguishable from the issue presented in this case.  First, in *Pereira* the Supreme Court only considered what it characterized as a "narrow[]" issue: "Does a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger the stop-time rule?"  *Pereira*, 138 S. Ct. at 2110.

The Court's resolution of this narrow issue has no relevance at all to Defendant's own case, as there is no question relating to proper application of the stop-time rule or whether a statutorily deficient

11

1    NTA stopped his accrual of continuous physical presence.  And the Court's own consistent reference to

2    the "narrowness" of the issue it was resolving, *id.* at 2110, 2113, belies any intent to render the broad

3    holding Defendant believes the Court actually entered.

4            Second, extrapolation from the issue the Supreme Court *did* resolve in *Pereira* to the issue

5    Defendant presents is misguided.  The Supreme Court's decision in *Pereira* is best limited to that

6    Court's own narrow conception of the question as lying "at the intersection of" two statutory provisions

7    (*id.* at 2110): the stop-time rule, which is triggered "when the alien is served *a notice to appear under*

8    *section 1229(a)* of" the INA, 8 U.S.C. § 1229b(d)(1), and the statutory provision specifying the

9    information that must be included in the Notice to Appear that is served on the alien, 8 U.S.C. §

10   1229(a)(1).  The Supreme Court concluded that Congress's specific reference to the statutory

11   "definition" of an NTA in the stop-time rule plainly indicated its intent that the stop-time rule would be

12   triggered *only* by an NTA specifying all of the statutorily required information.  *See Pereira*, 138 S. Ct.

13   at 2114-2117.  Thus, the Court's decision turned on explicit reference to the INA's definition of what

14   constitutes an NTA, *id.* at 2110-2113, which the statute in turn defines as that document which is served

15   on the alien to apprise (him/her) of the intent to commence removal proceedings, 8 U.S.C. § 1229(a).

16           No such issues of interpretation are presented in this case.  The regulations governing the vesting

17   of jurisdiction with the immigration court do not reference the statutory definition of a Notice to Appear,

18   as does the stop-time rule.  *Compare* 8 C.F.R. §§ 1003.14 & 1003.15, *with* 8 U.S.C. § 1229b(d)(1).  The

19   statutory definition actually enacted by Congress does not reference the filing of the document or the

20   commencement of proceedings with the immigration court, providing no statutory hook by which to

21   inject the Section 1229(a)(1) definition of "Notice to Appear" into the administrative process for

22   instituting removal proceedings.  And nowhere else in the statute—whether in Section 1229 or Section

23   1229a—did Congress mandate any particular process for vesting the immigration court with jurisdiction

24   or direct that proceedings could only be instituted upon the filing of a specific document with a specific,

1   and required, content.  In fact, the inclusion of multiple potential charging documents the filing of which

2   could vest the immigration court with jurisdiction over a particular case undercuts the contention that 8

3   U.S.C. § 1229(a)(1) is either the sole or even a relevant touchstone for the sufficiency of the charging

4   document contemplated by the regulation.  *See* 8 C.F.R. § 1003.13 (charging documents includes not

5   only NTAs, but also "a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind

6   and Request for Hearing by Alien" ).  On its face and by its terms, the definition of "Notice to Appear"

7   in Section 1229(a)(1) is relevant only insofar as it is cross-referenced and specifically incorporated in

8   other statutory provisions, none of which are involved in this case.  And again, as more fully addressed

9   in the preceding section, given this gap the Attorney General properly exercised his authority to

10  promulgate regulations governing these issues that Congress itself deemed better addressed through

11  rule-making rather than by statute.

12          Finally, the holding Defendant constructs for the *Pereira* decision—that all Notices to Appear

13  lacking a time and place for the initial hearing are essentially void and incapable of vesting jurisdiction

14  in the immigration court—sits uneasily with that Court's judgment.  After holding that the stop-time rule

15  should not have been applied to pretermit the application for cancellation of removal, the Supreme Court

16  directed that the case be "remanded for further proceedings consistent with this opinion," namely,

17  further consideration of the alien's eligibility for cancellation of removal.  *Pereira*, 138 S. Ct. 2120.  But

18  if the necessary result of the statutorily deficient Notice to Appear in *Pereira* is that proceedings could

19  have never been properly instituted in the first place, one could have expected the judgment to reflect the

20  impermissibility of any further proceedings in the alien's case in the absence of a newly filed, and

21  statutorily-compliant, Notice to Appear.  The contemplation of further proceedings on the alien's

22  eligibility for cancellation of removal in *Pereira* thus undercuts the contention that the deficiency

23  highlighted by the Court is fatal to the immigration court's jurisdiction.  And the Supreme Court's

24  silence on instituting such a broad and disruptive rule is especially telling, as it would be unlikely the

1   Court intended to hide such an elephantine holding in the mousehole of the decision it actually issued.[2]

2   *Cf. Whitman v. American Trucking Associations*, 531 U.S. 457, 468 (2001) (applying same principle in

3   declining to read statutory grant of authority more broadly than the text and general statutory scheme

4   would support).

C.      **Even if *Pereira* is Relevant, and the Notice to Appear was Deficient, the Notice of
        Hearing and Actual Commencement of Proceedings Cured that Initial Defect.**

Even if this court viewed *Pereira*'s holding as relevant to this case, it should further conclude

that any defect in the NTAs were cured by the subsequent service of the Notice of Hearing and

Defendant's full participation in his removal proceedings.  *See* Exhibits 2-3.  On May 20, 1998,

Defendant was personally served with his "Notice of Hearing in Removal Proceeding" hearing on June

10, 1998, at 8:3 a.m. at Immigration Court, 45100 N. 60th Street West, Lancaster, CA 93536.

Although the Supreme Court held that an NTA that omitted the time and place of the initial

hearing was "defective" for stop-time purposes, it did not address the effect, if any, of the subsequently

served Notice of Hearing.  There is good reason to believe that if total compliance with the statute is

necessary before jurisdiction vests with the immigration court, the Notice of Hearing, providing the

piece of information that was missing from the initial NTA, is sufficient to meet the requirements of 8

U.S.C. § 1229(a)(1).

---

[2] The disruptive potential of this argument is in fact even broader than acknowledged by Defendant, and cannot be limited to only those cases where an alien was *denied* relief and ordered removed.  If an NTA that lacks the time and place of the initial hearing is defective and insufficient to vest jurisdiction with the immigration court, that will be true as well in cases where the alien was *granted* relief.  The logical outcome of applying Defendant's argument is that *every removal proceeding* that was instituted based on an NTA lacking time and place information must be redone, and the scope of that rule encompasses not only aliens like Defendant who were denied relief and ordered removed, but also all those aliens who were granted relief, who have since perhaps obtained other lawful status, and who have been living in the United States lawfully for many years.  Considering the chaos this rule could thus impose on the system, it is fair to question whether the Supreme Court would have only *implicitly* rendered the holding Defendant imagines.

First, prior to the agency and court of appeals decisions holding that an NTA need not include a time and place for the initial hearing in order to trigger the stop-time rule, the courts of appeals had generally held that a Notice to Appear lacking such information, together with the subsequently served Notice of Hearing, were together sufficient to meet the statutory definition under Section 1229(a)(1). *See Guamanrrigara v. Holder*, 670 F.3d 404, 410 (2d Cir. 2012) (per curiam); *Popa v Holder*, 571 F.3d 890, 895-96 (9th Cir. 2009); *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009); *Dababneh v. Gonzales*, 471 F.3d 806, 809 (7th Cir. 2006); *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 937 & n.3 (9th Cir. 2005). *Pereira* does not explicitly overrule these decisions, nor, given the absence of any timely served Notice of Hearing, did the Supreme Court have any reason to address the holdings of these decisions.  To the extent they were referenced at all, Justice Kennedy characterized their holdings as an "emerging consensus" that was "abruptly dissolved" by other developments.  *Pereira*, 138 S. Ct. at 2120. (Kennedy, J., concurring). Nonetheless, these decisions are not contrary to the statute, which explicitly mandates "notice" of certain information but is silent on whether that notice must be in one document or could be in multiple documents. *Cf.* 8 C.F.R. § 1003.18 (providing that the place, date, and time of the hearing should be provided through the Notice of Hearing if it is not included in the NTA).

Second, construing the service of the Notice of Hearing as curing the underlying defect in the NTA is consistent with how the Supreme Court has dealt with similar initial defects that are deemed cured upon the subsequent acts of a litigant. In *Becker v. Montgomery*, for instance, the Supreme Court held that an unsigned notice of appeal satisfied Federal Rule of Appellate Procedure 3(a)(1)'s requirement to timely "fil[e] a notice of appeal with the district clerk," so long as it was subsequently signed, even if that signing occurred after the time to appeal had expired.  532 U.S. 757, 768 (2001). Following *Becker*, the Court upheld an Equal Employment Opportunity Commission regulation that permitted amendment of a timely filed Title VII discrimination charge to include an omitted, but required, verification, even if that amendment occurred outside the statutory charge-filing period.

*Edelman v. Lynchburg College*, 535 U.S. 106, 115-118 (2002).  Two terms later, in *Scarborough v. Principi*, the Court applied *Becker* and *Edelman* to hold that a timely filed application for attorney's fees under the Equal Access to Justice Act could be amended after expiration of the statutory filing period to include the necessary allegation that the government's position in the underlying litigation was "not substantially justified."  541 U.S. 401, 413-419 (2004).  The holdings of these cases support the curative effect of the Notice of Hearing—an initially defective document or filing (the NTA in this case) can be cured when the necessary information is provided (through the Notice of Hearing).

Here, on May 20, 1998, Defendant was properly served with a Notice of Hearing of June 10, 1998, at 8:30 a.m., for his removal hearing, when in fact his removal hearing occurred.  Defendant did not contest the finding of removal.  His motion to dismiss the indictment fails.

Dated this 1st day of November, 2018.          Respectfully submitted,

                                                DAYLE ELIESON
                                                United States Attorney


                                                 /s/ Sue Fahami
                                                SUE FAHAMI
                                                Assistant United States Attorney

1

CERTIFICATE OF SERVICE

2      It is hereby certified that pursuant to LCR 47-4 service of the foregoing GOVERNMENT'S

3  OPPOSITION IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS was made through the

4  Court's electronic filing and notice system (CM/ECF).

5      Christopher Frey, A.F.P.D.
        201 West Liberty Street, Suite 102
6      Reno, Nevada 89501
        Attorney for Defendant Palomar-Santiago
7

8      DATED this 1st day of November, 2018.

9

10              _/s/ Sue Fahami_____
                SUE FAHAMI

11

12

13

14

15

16

17

18

19

20

21

22

23

24