RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
CHRISTOPHER P. FREY
Assistant Federal Public Defender
Nevada State Bar No. 10589
201 W. Liberty Street, Ste. 102
Reno, Nevada 89501
(775) 321-8451/Phone
Chris_Frey@fd.org

Attorney for Refugio Palomar-Santiago

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>REFUGIO PALOMAR-SANTIAGO,<br><br>    Defendant. | Case No. 3:17-CR-00116-LRH-WGC<br><br>**REPLY TO GOVERNMENT'S OPPOSITION IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS[1]** |

Defendant, REFUGIO PALOMAR-SANTIAGO, by and through his counsel, Christopher P. Frey, Assistant Federal Public Defender, hereby replies to the Government's Opposition in Response to Defendant's Motion to Dismiss.

This reply is based on the points and authorities herein.

///

///

///

///

---

[1] Certification: this reply is timely filed.

I.  ARGUMENT

    A.    **THE GOVERNMENT CONCEDES EXHAUSTION AND PREJUDICE SINCE EXHAUSTION AND PREJUDICE ARE PRESUMED UNDER CONTROLLING NINTH CIRCUIT PRECEDENT.**

Consistent with binding Ninth Circuit precedent, exhaustion and prejudice under 8 U.S.C. 1326(d)(1) and (2) are presumed when a person is wrongfully removed on the basis of a conviction that was mischaracterized as an aggravated felony. *See United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017) ("[U]nder our circuit's law, if Defendant was not convicted of an offense that made him removable under the INA to begin with, he is excused from proving the first two requirements."); *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) (presuming exhaustion and prejudice and affirming dismissal of § 1326 indictment where defendant's vehicular homicide conviction years earlier was not an aggravated felony in light of *Leocal v. Ashcroft*, 543 U.S. 1, 125 S.Ct. 377 (2004)). The government concedes this.[2]

    B.    **THERE WERE NO ADMINISTRATIVE REMEDIES TO EXHAUST EVEN IF MR. PALOMAR-SANTIAGO HAD A BURDEN TO DEMONSTRATE EXHAUSTION.**

The government's exhaustion argument is contrary to controlling Ninth Circuit precedent. There is no need address the government's exhaustion argument further, except to note the faults in its chief premise. Mr. Santiago-Palomar could not have applied for relief during his removal proceedings, even if he wanted to. This is because practically there is no relief from removal when the basis for removal is an aggravated felony.[3]

When an individual in removal proceedings is found to have committed an aggravated felony, no discretionary relief is available, even for legal permanent residents like Mr. Palomar-

---

[2] *See* ECF No. 24 (Government's Opposition in Response to Defendant's Motion to Dismiss [hereinafter Response]) at 3: 1-5.

[3] An aggravated felony determination, for example, generally renders a person ineligible for voluntary departure, cancellation of removal, or adjustment of status. These three forms of relief were the only forms of possible relief highlighted in the Notice of Hearing relied upon by the government. *See* ECF No. 24-2 (Exhibit 2 to Response).

Santiago. *See* 8 U.S.C. § 1229b(a)(3). And there is no resort to an appeal in the federal courts. *See Arteaga v. Mukasey*, 511 F.3d 940, 946 (9th Cir. 2007) (noting that the INA divests the federal courts of jurisdiction to review any order of removal against an alien removable by reason of having committed an aggravated felony). The effective result of an aggravated felony determination is mandatory deportation and permanent inadmissibility.

The Notice to Appear here charged Mr. Palomar-Santiago with only one ground of deportability—i.e., that he had been convicted of an "aggravated felony" as a result of his conviction under § 23513 of the California Vehicle Code.[4] Only this ground for removal was alleged in the Notice to Appear; correspondingly, the immigration judge was empowered to determine removability on only this basis. And the immigration judge did, concluding that Mr. Palomar-Santiago was "subject to removal on the charge[s] in the Notice to Appear."[5]

Because the Notice to Appear only charged that Mr. Palomar-Santiago was removable due to an aggravated felony, the immigration judge could not have—and would not have—advised Mr. Palomar-Santiago, for example, of his eligibility for voluntary departure. That would have been an irregular event and contrary to law. Having suffered a conviction for an aggravated felony, Mr. Palomar-Santiago was not legally eligible to apply for any form or discretionary relief. Accordingly, even if Mr. Palomar-Santiago had a burden to demonstrate exhaustion, which he does not, *see Ochoa*, 861 F.3d at 1015; *Camacho-Lopez*, 450 F.3d at 930, given the presumption of regularity and that the immigration judge would have followed the law, he has. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties." (internal quotation marks omitted)); *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official

---

[4] ECF No. 23-2 (Exhibit B [Notice to Appear], Motion to Dismiss).
[5] ECF No. 23-1 (Exhibit A [Order of the Immigration Judge], Motion to Dismiss).

acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *see also Walton v. Arizona*, 497 U.S. 639, 653 (1990), ("[J]udges are presumed to know the law and to apply it in making their decisions."), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *cf. Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (a jury is presumed to follow the law).

### C. THE *PEREIRA* ISSUE.

The government contends that (1) *Pereira* is narrowly confined to the stop-time rule, (2) jurisdiction vested in the immigration court here since the contents of the notice to appear met certain regulatory requirements, and (3) even if *Pereira* applied and there was no jurisdiction initially due to a defective notice to appear, the *Pereira* defects were cured and jurisdiction vested retroactively because the immigration court issued a later notice of hearing. The identical arguments were addressed and disposed of on October 30, 2018 after a comprehensive analysis by the district court in *United States v. Edgar Alfredo Valladares*, 1:17-cr-00156-SS.[6] There, the district court reached well-reasoned conclusions—encapsulated in the argument to follow—rejecting each of the government's contentions.

### i. The *Pereira* court meant what it said—a notice to appear without time and place information is not a notice to appear at all.

The *Pereira* decision "did not say that a putative notice to appear that omits the time and place of a removal hearing fails to trigger the stop-time rule—it says that such a document is not a notice to appear *at all*." *Valladares*, 1:17-cr-00156-SS at *9 (Exhibit A); *see Pereira*, 138 S. Ct. at 2115-17 (holding that "[c]onveying . . . time-and-place information to a noncitizen is an *essential* function of a notice to appear . . . [and f]ailing to specify integral information like the time and place of a removal proceedings unquestionably would deprive the notice to appear of its *essential character*" (emphasis added)).

---

[6] A complete copy of that decision is attached hereto as Exhibit A.

4

In an effort to support a narrower reading of *Pereira*'s basic holding, the government relies on the reasoning of *Matter of Bermudez-Cota*, 27 I & N Dec. 441 (BIA Aug. 31, 2018), where the Board of Immigration Appeals (BIA) concluded that it was "compelled to follow 8 C.F.R. § 1003.18(b)," which states that the notice to appear need only include time-and-place information "where practicable." *Bermudez-Cota*, 27 I & N Dec. at 445. Based on the "where practicable" language of 8 C.F.R. § 1003.18(b), the BIA reasoned that jurisdiction would vest even if the notice to appear omitted time and place information, "so long as a notice of hearing specifying this information is later sent to the alien." *Id*. at 447.

The reasoning of *Bermudez-Cota* is unpersuasive for numerous reasons. First, the BIA in *Bermudez-Cota* failed to recognize that § 1003.18(b) was abrogated by *Pereira* as inconsistent with the text of 8 U.S.C. § 1229(a)(2). *See Pereira*, 138 S.Ct. at 2111, 2113-14 (rejecting agency's reliance on "where practicable" language of regulation to routinely issue statutorily deficient notices to appear). Second, the assumption in *Bermudez-Cota* that a deficient agency-issued notice to appear can be cured through a subsequent court-issued notice of hearing directly conflicts with *Pereira*'s holding disapproving of this "two-step procedure." *Pereira*, 138 S.Ct. at 2114. Immigration courts lack authority to issue notices to appear. *Moscoso-Castellanos v. Lynch*, 803 F.3d 1079, 1083 (9th Cir. 2015), *abrogated on other grounds by Pereira*, 138 S. Ct. at 2113 n.4. Only the prosecuting agency in removal proceedings—the Department of Homeland Security (DHS)—may do so. *See id.* An immigration court thus has no authority to retroactively "perfect" a deficient agency-issued notice to appear that omits time and place information through a subsequent notice of hearing that provides that information.[7] Finally, the BIA's analysis in *Bermudez-Cota* pertains to the

---

[7] Two absurd conclusions result if this were the case. A notice to appear is the charging document that "initiates" a removal proceeding. *See* 8 U.S.C. § 1229 ("Initiation of Removal Proceedings"); *see also* 8 C.F.R. § 1239.1 (citing § 1229 as authority for the rule that removal proceedings commence by filing a notice to appear). If the responsibility to supply time and

5

scope of that agency's own authority and jurisdiction. It is therefore not entitled to *Chevron* deference.[8] *See Pereira*, 138 S.Ct. at 2120-21 (Kennedy, J., concurring) (constitutional separation-of-powers principles require that deference not be given to "an agency's interpretation of the statutory provision that concern the scope of its own authority" or "jurisdiction"); *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1151-52 (10th Cir. 2016) (Gorsuch, J., concurring) (noting that *Chevron* deference is "a judge-made doctrine for the abdication of the judicial duty" and rejecting the notion that "legislative ambiguity represents a license to executive agencies to render authoritative judgments about what a statute means").

> **ii.    A valid notice to appear must include time and place information— the government's argument to the contrary (1) is based on an incomplete reading of the regulations, (2) ignores *Pereira*'s core holding and Congressional intent, (3) mistakenly gives primacy to regulatory requirements over statutes and (4) is absurd.**

The government asserts that an immigration court's jurisdiction is determined by whether the contents of a notice to appear comport with certain regulatory requirements—8 C.F.R. §§ 1003.13, 1003.14, 1003.15—and claims that Mr. Palomar-Santiago's Notice to Appear complied with those regulations because those regulations do not require the inclusion of time and place information.[9] Accordingly, there was jurisdiction.

---

place information—as required of a notice to appear under 8 U.S.C. § 1229—were to fall to the immigration courts, the courts would become a joint venturer in the prosecution. This is contrary to law and Congressional intent. Moreover, if a deficient notice to appear were sufficient to initiate a removal proceeding, so long as the immigration court later issues a notice of hearing with that information, the stop-time rule would never apply. It would be rendered superfluous.

[8] The applicable principle in construing the statute at issue here—8 U.S.C. § 1229—is not *Chevron* deference. Because of § 1229's ramifications in any § 1326 prosecution, which requires proof of a valid underlying removal, the controlling principle is the rule of lenity. Under that principle, to the extent there is any ambiguity about the statute post-*Pereira*, it should be read in favor of Mr. Palomar-Santiago and others like him. *United States v. Bass*, 404 U.S. 336, 347, 92 S. Ct. 515, 522, 30 L. Ed. 2d 488 (1971) (["A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.")

[9] ECF No. 24 (Response) at 6: 9-12; 7-10.

The government is mistaken. Notably, time and place information is required by statute. *See* 8 U.S.C. § 1229(a)(1)(G)(i). But it is seemingly not required by the regulation—8 C.F.R. § 1003.15(b) and (c)—that the government deems controlling here.[10] The government's position stems from an incomplete assessment of the relevant regulations, which do, in fact, require the inclusion of time and place information. Under 8 C.F.R. § 1003.18, immigration authorities "shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." Thus, a valid notice to appear must include time and place information under 8 C.F.R. § 1003.18, *in addition* to the information required by 8 C.F.R. § 1003.15.

Moreover, as the court in *Valladares* recognized, the government has an even "bigger problem" with its argument that time and place information, though required by statute (8 U.S.C. § 1229(a)(1)(G)(i)), is optional at best by regulation (8 C.F.R. §§ 1003.15(b) and (c); 1003.18). See *Valladares*, 1:17-cr-00156-SS at *10 (Exhibit A). Specifically, the government's regulatory argument

> was expressly rejected by *Pereira* when it held that notices to appear must include information specifying the time and place of removal proceedings in all circumstances, not merely where the inclusion of such information was 'practicable.' *See Pereira*, 138 S. Ct. at 2111-13; *see also* Br. for Resp't, *Pereira v. Sessions*, 138 S. Ct. 2105, at 49 (relying on the "where practicable" language to argue notices to appear did not need to include information about the time and place of removal hearings in order to trigger the stop-time rule). Indeed, the Supreme Court in *Pereira* acknowledged that the Board of Immigration Appeals had previously ruled that the stop-time rule could be triggered by a notice to appear that did not include the date and time of the removal proceedings because the regulations required this information only 'where practicable.' *Pereira,* 138 S. Ct. at 2111-12 (*citing Matter of Camarillo*, 25 I. & N. Dec. 644 (2011)). But because this ruling found 'little support in the statute's text,' *id*. at 2120 (Kennedy, J., concurring), the Supreme Court [in *Pereira*] rejected it. The Government's position is thus directly

---

[10] As discussed more fully below, the government's claim that a less demanding regulation should somehow control over a more demanding statute is absurd on its face.

> contradicted by *Pereira's* holding that, regulatory language notwithstanding, a notice to appear must always include the time and place of removal proceedings.

*Valladares*, 1:17-cr-00156-SS at *10 (Exhibit A).

The government's regulatory argument is also contrary to the "clear and unambiguous intent of Congress." *Id*. (Exhibit A). Put simply, "if Congress clearly and unambiguously intended for notice to appear to always include time-and-place information, the regulations may not give effect to a notice to appear that fails to include this information." *Id*. at *11 (Exhibit A). As the *Pereira* court determined, "[b]ased on the plain text of the statute," Congress clearly and unambiguously intended that a notice to appear include time and place information. *Id*. at 2113-14, 2116 (time and place information is "essential"; its omission in a notice to appear is not "some trivial, ministerial defect, akin to an unsigned notice of appeal").

The government's regulation argument is not only contrary to Congressional intent as well as the holding in *Pereira*, it is contrary to common sense for at least three reasons. First, as the court reasoned in *Valladares*, "it is illogical to suppose that a regulation requiring a notice to appear to include time-and-place information 'where practicable' is contrary to Congressional intent while a regulation that would never require notice to appear to include this information is not." *Id*. at *11 (Exhibit A). Similarly, it would be absurd for Congress to require a notice to appear to include some of the information in § 1229 but not the time and place of removal hearings. *Id.* at *11. Finally, § 1229 and the regulations define the same document in identical ways and recognize it to be a charging document. *Id*. There "is no reason why the function of a notice to appear should affect the information that it must include." *Id*.

In light of *Pereira*, § 1229 unambiguously requires that a notice to appear always include time and place information. Accordingly, the regulations relied upon by the government—8 C.F.R. §§ 1003.15 and 1003.18—to read the statute optionally, or as requiring less than § 1229, are *ultra vires* and should not be given effect. *See Valladares*, at *12. Where

"a regulation is 'inconsistent with the statutory language' or is 'an unreasonable implementation of it,' the regulation 'will not control' over the statute." *Id*. at *12 (quoting *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999)). The government's reading of 8 C.F.R. §§ 1003.15 and 1003.18 is both "absurd and contradictory" and an unreasonable implementation of § 1229. Accordingly, the statutory definition of a notice to appear, which *Pereira* clarified mandates the inclusion of time and place information, controls here. In short, statutorily-compliant notices to appear must "always include time-and-place information, including when they are used as charging documents for removal proceedings." *Valladares*, at *12; *see also United States v. Omniel Robaina Ortiz*, 3:18-cr-00071-RWG at *4 n.3 (Nov. 6, 2018).[11]

### iii. The Notice to Appear issued to Mr. Palomar-Santiago was void because it failed to include time and place information and consequently the immigration court lacked jurisdiction to order his removal and the indictment must be dismissed.

Because the Notice to Appear issued to Mr. Palomar-Santiago failed to include time and place information, it did not constitute a charging document initiating removal proceedings. *See* 8 U.S.C. § 1229 ("Initiation of Removal Proceedings"); 8 C.F.R. § 1239.1 (citing § 1229 as authority for the rule that removal proceedings commence by filing a notice to appear). Accordingly, jurisdiction never vested with the immigration court. *See* 8 C.F.R. § 1003.14 (stating that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Court by [DHS]").

As the court reasoned in *Valladares*, "[b]ecause jurisdictional defects render a judgment void," Mr. Palomar-Santiago's "removal from this country was void." *Id*. at *17. The government confuses the issue when it claims that the jurisdictional defects were cured because Mr. Palomar-Santiago had actual notice of his removal hearing after being personally served with a notice of hearing. The sufficiency of notice is one thing. Whether a notice to appear

---

[11] A full copy of this decision is attached as Exhibit B.

satisfies the statutory and regulatory requirements to constitute a charging document vesting an immigration court with jurisdiction is another. *See Valladares*, at *14-17. Indeed, the Supreme Court in *Pereira* rejected the very same argument the government advances here. *Id*. at 138 S. Ct. at 2113. An immigration court's jurisdiction cannot be conferred piecemeal through a "two-step procedure." Either it vests at the inception of removal proceedings through a valid notice to appear, or it does not. Jurisdiction did not vest in the immigration court in Mr. Palomar-Santiago's removal proceedings because the Notice to Appear was invalid. So too was his removal. The government thus cannot satisfy the elements of illegal reentry under § 1326, and the indictment against Mr. Palomar-Santiago must be dismissed. *Cf. Valladares*, at *17.

## II.   CONCLUSION

Based on the foregoing, the indictment must be dismissed.

DATED November 7, 2018.

                                            RENE L. VALLADARES
                                            Federal Public Defender

                      By:  */s/ Christopher Frey*
                                              CHRISTOPHER P. FREY
                                            Assistant Federal Public Defender
                                            Counsel for Defendant Palomar-Santiago

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on November 7, 2018, she served an electronic copy of the above and foregoing Reply to Government's Opposition in Response to Defendant's Motion to Dismiss by electronic service (ECF) to the person named below:

> DAYLE ELIESON
> United States Attorney
> SUE FAHAMI
> Assistant United States Attorney
> 400 South Virginia Street, Suite 900
> Reno, NV 89501

*/s/ Katrina Burden*
Employee of the Federal Public Defender