# Exhibit A

# Edgar Alfredo Valladares

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**UNITED STATES OF AMERICA,**
Plaintiff,

-vs-

**EDGAR ALFREDO VALLADARES,**
Defendant.

CAUSE NO.:
A-17-CR-00156-SS

## ORDER

BE IT REMEMBERED that on this date the Court considered Defendant Edgar Alfredo Valladares's Motion to Dismiss the Indictment [#30], the Government's Response [#35], the Defendant's Post-Hearing Reply [#40], and the Government's Sur-Reply [#42] thereto. The Court delayed ruling on the motion to consider Judge Orlando L. Garcia's order in *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG (W.D. Tex. Oct. 17, 2018) vacating his previous dismissal of an illegal reentry indictment as well as the recent district court opinions Judge Garcia cited in that order. *See United States v. Santos Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5014522 (D.Kan. Oct. 15, 2018); *United States v. Jose Vincente Lira-Ramirez*, No. 18-10102-JWB, 2018 WL 5013523 (D. Kan. Oct. 15, 2018). Having considered these cases, the motions, the arguments of counsel, the governing law, and the file as a whole, the Court now issues the following opinion and order.

1

## Background

Edgar Alfredo Valladares is a Honduran citizen[1] whose presence in this country was first discovered by immigration authorities on November 25, 2010. Mot. Dismiss Indictment [#30] at 2. Upon discovering Valladares's presence, immigration authorities personally served him with a notice to appear before an immigration judge for a removal hearing. Resp. [#35] at 3; *see* 8 U.S.C. § 1229. Importantly, this notice to appear failed to include the time and date of the hearing, Resp. [#35] at 3, indicating only the hearing would occur "on a date to be set at a time to be set." Mot. Dismiss Indictment [#30] Ex. A at 1.

The notice to appear's failure to specify the date or time did not prevent Valladares from appearing at his removal hearing on December 14, 2010, where he admitted to the allegations contained in the notice to appear. Resp. [#35] at 3–4. Following the hearing, the immigration judge ordered Valladares removed. Mot. Dismiss Indictment [#30] at 2. Valladares waived appeal of the decision and was deported on December 29, 2010. *Id.*

Some time later, Valladares returned to the United States, where he was again found by immigration authorities on September 30, 2016. *Id.* On April 4, 2017, Valladares was indicted for illegally reentering the United States in violation of 8 U.S.C. § 1326. Indictment [#4] at 1.

After Valladares's indictment, the Supreme Court issued its opinion in *Pereira v. Sessions* wherein it held that a notice to appear under 8 U.S.C. § 1229(a) must include the time and place of the removal hearing. *Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018). Subsequently, a number of defendants have moved to dismiss their indictments brought under § 1326, arguing their removals were invalid because of defects in the original notices to appear.

---

[1] The Government's response states that Valladares is a Mexican citizen. Resp. [#35] at 3, 24. In prior pleadings, however, the Government had consistently characterized Valladares as a Honduran citizen. *See, e.g.*, Compl. [#1]; Mot. Revoke Release Order [#25] at 2.

2

*See, e.g., Zapata-Cortinas*, 2018 WL 4770868, at *1; *United States v. Pedroza-Rocha*, No. EP-18-CR-1286-DB (W.D. Tex. Sep. 21, 2018) (order granting motion to dismiss the indictment).

Valladares now argues that because the notice to appear he received in 2010 failed to include a date and time for his removal hearing as required by *Pereira*, the immigration court lacked jurisdiction to order his removal. Mot. Dismiss Indictment [#30] at 1–2. Because the immigration court lacked jurisdiction to order his removal, the removal was illegal and cannot for the basis for an indictment for illegal reentry. *Id.* The Government responds that *Pereira* does not apply to Valladares's case and that Valladares's 2010 removal comported with the law. Resp. [#35]. Valldares's motion has been thoroughly briefed and is ripe for decision.

## Analysis

Typically, an alien must meet all three requirements of 8 U.S.C. § 1326(d) to collaterally attack the validity of a removal order. These three requirements are (1) the alien must have exhausted any administrative remedies, (2) the proceedings at which the order was issued must have improperly deprived the alien of the opportunity for judicial review, and (3) the entry of the deportation order must have been fundamentally unfair. 8 U.S.C. § 1326(d)(1–3).

Valladares's challenge is atypical. He contends that because the Government failed to file an effective notice to appear, the immigration judge never had jurisdiction to commence removal proceedings against him. Mot. Dismiss Indictment [#30] at 2. Because the immigration judge never had jurisdiction over his removal proceedings, the resulting removal order was void. *Id.* at 5.

Although § 1326(d) restricts the types of collateral attacks that may be made on the validity of a deportation order, "*any* judgment may be collaterally attacked if it is void for lack of jurisdiction." *Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014) (emphasis in original); *see*

3

*also Matter of Reitnauer*, 152 F.3d 341, 344 n.12 (5th Cir. 1998) ("It is true that (1) jurisdictional defects render a judgment void, and (2) void judgments are subject to collateral attack."). The removal order against Valladares was a judgment because it was an "order from which an appeal lies." FED. R. CIV. PRO. 54(a); *see* 8 C.F.R. § 1003.38(a) ("Decisions of Immigration Judges may be appealed to the Board of Immigration Appeals . . . ."). Valladares may therefore collaterally attack the judgment as being void for lack of jurisdiction notwithstanding the fact that such grounds are absent from § 1326(d). *Compare Santos Larios-Ajualat*, 2018 WL 5013522, at *6 (finding that defendant could not collaterally challenge a deportation order unless he met each of § 1326(d)'s requirements).

The Court must therefore determine whether the immigration judge had jurisdiction to order Valladares's removal in 2010. If, as Valladares contends, his 2010 removal was void for lack of jurisdiction, then that removal was illegal, which means the Government cannot meet an essential element of illegal reentry because Valladares was never legally "removed." 8 U.S.C. § 1326(a)(1); *see* Mot. Dismiss Indictment [#30] at 5. By contrast, if jurisdiction properly vested in the immigration court, then Valladares may not challenge his removal because he has not shown that the deportation proceedings improperly deprived him of the opportunity for judicial review in violation of § 1326(d)(2).[2] And if Valladares cannot challenge his removal, then the indictment must stand.

Under 8 U.S.C. § 1229a(a)(1), proceedings for determining the admissibility or removability of an alien are conducted by an immigration judge. These proceedings are "the sole and exclusive procedures" for determining whether an alien may be removed from the United States *id.* § 1229a(1)(3), and may only take place if the immigration judge has jurisdiction to

---

[2] Valladares argues he was not required to exhaust his administrative remedies or seek judicial review because the removal proceedings were void for lack of jurisdiction. Mot. Dismiss Indictment [#30] at 6–7. But the authority offered in support speaks only to the issue of the exhaustion of administrative remedies. *See id.*

4

hear the dispute. *See DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 815 (5th Cir. 2001) (detailing the procedures that must be met for removal proceedings to commence). The requirements for jurisdiction in the immigration court are set forth in regulations promulgated by the Attorney General pursuant to authority delegated to him by statute. *See* 8 U.S.C. § 1003(g)(2) (bestowing upon the Attorney General the duty to "establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section."). Under those regulations, an immigration court has jurisdiction over removal proceedings if a charging document is filed by the appropriate immigration authorities. *See* 8 C.F.R. § 1003.14 ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."). The regulations define a "charging document" as including "a Notice to Appear." *Id.* § 1003.13.

The parties dispute what information must be included in a notice to appear in order for it to qualify as a charging document sufficient to confer jurisdiction. Relying on *Pereira*, Valladares argues that a notice to appear is not a valid charging document unless it includes the time and place at which the removal proceedings will be held as required by 8 U.S.C. § 1229(a)(1). Mot. Dismiss Indictment [#30] at 5. In turn, the Government argues that a notice to appear may be a valid charging document without including the time and place of the removal proceedings because the applicable regulation does not require a notice to appear to include this information. Resp. [#35] at 8.

Because Valladares's notice to appear failed to include information on the date or time of his removal hearing, Mot. Dismiss Indictment [#30] at 5, whether this information must be included to trigger the immigration court's jurisdiction will determine if Valladares's removal was legal. If a notice to appear that does not include information specifying the date and time of

5

the removal hearing is not a proper charging document, then the immigration court never had jurisdiction to order his removal, and the current prosecution fails because Valladares was never properly removed. Conversely, if the Government is correct and a notice to appear may be a charging document without this information, then the immigration court had jurisdiction to order his removal, and Valladares's indictment must be upheld.

Whether the notice to appear in this case vested jurisdiction despite its failure to include information specifying the date and time of Valladares's removal hearing turns on the applicability of the Supreme Court's recent opinion in *Pereira*. *Pereira* involved the operation of the "stop-time rule" in removal proceedings. Generally, a nonpermanent resident who is subject to removal may have that removal canceled if the nonpermanent resident meets certain enumerated criteria, one of which is continuous physical presence in the United States for at least ten years. *Pereira*, 138 S. Ct. at 2110. This policy is conditioned by the "stop-time rule," which states that any period of continuous physical presence in the United States is deemed to end "when the alien is served a notice to appear under section 1229(a) . . . ." *Id.*

The petitioner in *Pereira* was a nonpermanent resident who was first admitted to the United States in 2000. *Id.* at 2112. In 2006, Pereira was served in person with a notice to appear, informing him that removal proceedings were being initiated against him and stating that such proceedings would commence on a date "to be set" and at a time "to be set." *Id.* Lacking more specific information regarding his removal hearing, Pereira failed to appear and was ordered removed in absentia by the immigration court. *Id.* Despite this removal order, it does not appear that Pereira was ever actually deported from the United States. *Id.*

In 2013, after he had been in the country for more than ten years, Pereira was again detained by immigration authorities, and removal proceedings were reopened against him. *Id.*

6

Pereira sought to have his removal cancelled, arguing the stop-time rule was not triggered by the 2006 notice to appear because the notice to appear had failed to include information about the time and date of his removal hearing as required by § 1229(a). *Id.* The immigration court, finding the law "quite settled," determined that this omission did not render the notice to appear defective and that the stop-time rule applied to Pereira. *Id.* This decision was affirmed by the Board of Immigration Appeals and the First Circuit. *Id.*

The Supreme Court reversed, holding that "[t]he plain text, the statutory context, and common sense all lead inescapably and unambiguously" to the conclusion that a notice to appear that omits time-and-place information is not a notice to appear under § 1229 and thus cannot trigger the stop-time rule. *Id.* at 2110. Referring to the doctrine espoused in *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the Court accorded no deference to the immigration court's determination of whether time-and-place information must be included in a notice to appear because Congress had "supplied a clear and unambiguous answer" to the question. *Pereira*, 138 S. Ct. at 2113–14. The Court further noted that the failure to specify "integral information like the time and place of removal proceedings" deprived the notice to appear of "its essential character," *id.* at 2116–17, and that time-and-place information was no less crucial in a notice to appear than information explaining the charges the alien faced. *Id.* at 2115 n.7.

This Court must determine whether *Pereira* requires a notice to appear to include information specifying the date and time of removal proceedings in order to vest the immigration court with jurisdiction. Answering this question requires a two-part analysis. First, the Court must determine whether *Pereira* governs the requirements that must be met for a notice to appear to function as a proper charging document sufficient to trigger jurisdiction. *See* 8 C.F.R.

7

§§ 1003.13, 1003.14, 1003.15. Second, the Court must determine whether the failure to file a notice to appear that includes time-and-place information deprived the immigration court of jurisdiction to commence removal proceedings in this case.

### A. The Application of *Pereira* to Notices to Appear as Charging Documents.

In order to determine whether a notice to appear must include information specifying the time and place of an alien's removal hearing to vest jurisdiction in the immigration court, the Court must determine the proper scope of *Pereira*. And in order to determine the proper scope of *Pereira*, the Court must determine, first, whether *Pereira* applies only in the context of the stop-time rule; and, if not, whether *Pereira* applies to notices to appear operating as charging documents.

As to the first issue, there is no indication in *Pereira* that notices to appear must include the date and time of the removal hearing only in the context of the stop-time rule. Indeed, *Pereira* does not say that a putative notice to appear that omits the time and place of a removal hearing fails to trigger the stop-time rule—it says that such a document is not a notice to appear *at all*. See *Pereira*, 138 S. Ct. at 2115 ("Conveying such time-and-place information to a noncitizen is an *essential function* of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings.") (emphasis added); *id.* at 2116–17 ("Failing to specify integral information like the time and place of removal proceedings unquestionably would deprive the notice to appear of its *essential character*.") (quotes and citations omitted) (emphasis added). Moreover, the conclusion that time-and-place information must always be included in a notice to appear is supported by other provisions in the statute. See *id.* at 2114 (explaining that statutory language allowing the Government to change or postpone the removal proceedings to a new time or place "presumes that the Government has

8

already served a 'notice to appear' . . . that specified a time and place as required by § 1229(a)(1)(G)(i)."); *id.* at 2114–15 (applying the time-and-place requirement to statutory provision detailing an alien's securing of counsel); *id.* at 2116 ("[W]hen the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)."). The Court therefore concludes the requirement that notices to appear include information about the time and place of removal proceedings also applies to contexts outside of the stop-time rule.

The Court next considers whether a notice to appear must include time-and-place information to serve as a proper charging document sufficient to vest the immigration judge with jurisdiction. This analysis is complicated by the fact that a "notice to appear" is defined in both the statute and the regulations. Under the statutory definition at 8 U.S.C. § 1229(a)(1), a notice to appear must include information about the time and place of the removal hearing. Under the regulatory definition at 8 C.F.R. § 1003.15, however, a notice to appear must include all the information required by § 1229(a)(1) except the time and place of the removal hearing.

The Government argues that because the regulations govern when jurisdiction vests in the immigration court, the regulatory requirements for a notice to appear should control. Resp. [#35] at 8. Because the regulatory requirements should control, a notice to appear need not include time-and-place information to vest the immigration court with jurisdiction. *See id.* at 7–8.

This argument is based on an incomplete reading of both the applicable regulations and the *Pereira* decision. The Government's reading of the regulations is incomplete because it ignores 8 C.F.R. § 1003.18, which states that immigration authorities "shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." Thus, a full reading of the regulatory definition is that a notice to appear must always include the information

9

contained in § 1003.15 *and* must include the time, place, and date of removal hearing where practicable.

The bigger problem for the Government is that the regulatory definition given above was expressly rejected by *Pereira* when it held that notices to appear must include information specifying the time and place of removal proceedings in *all* circumstances, not merely where the inclusion of such information was "practicable." *See Pereira*, 138 S. Ct. at 2111–13; *see also* Br. for Resp't, *Pereira v. Sessions*, 138 S. Ct. 2105, at 49 (relying on the "where practicable" language to argue notices to appear did not need to include information about the time and place of removal hearings in order to trigger the stop-time rule). Indeed, the Supreme Court in *Pereira* acknowledged that the Board of Immigration Appeals had previously ruled that the stop-time rule could be triggered by a notice to appear that did not include the date and time of the removal proceedings because the regulations required this information only "where practicable." *Pereira*, 138 S. Ct. at 2111–12 (*citing Matter of Camarillo*, 25 I. & N. Dec. 644 (2011)). But because this ruling found "little support in the statute's text," *id.* at 2120 (Kennedy, J., concurring), the Supreme Court rejected it. The Government's position is thus directly contradicted by *Pereira*'s holding that, regulatory language notwithstanding, a notice to appear must always include the time and place of removal proceedings.

Moreover, a regulation that would give effect to a notice to appear that does not include the time and place of removal proceedings would be contrary to the clear and unambiguous intent of Congress. When reviewing an agency's construction of the statute it administers, a court is "confronted with two questions. First, always, is the question whether Congress has spoken directly to the issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

10

*Chevron*, 467 U.S. at 842–43. Thus, if Congress clearly and unambiguously intended for notices to appear to always include time-and-place information, the regulations may not give effect to a notice to appear that fails to include this information.

The Court concludes Congress unambiguously intended for notices to appear to always include the time and place of removal hearings. Three facts compel this conclusion. The first is the Supreme Court's determination in *Pereira* that § 1003.18's requirement that time-and-place information be included only "where practicable" was contrary to Congress's intent. It is illogical to suppose that a regulation requiring a notice to appear to include time-and-place information "where practicable" is contrary to Congressional intent while a regulation that would never require notices to appear to include this information is not. The second is that it would be "contradictory and absurd" for Congress to require a notice to appear to always include some of the information in § 1229(a) but not the date and time of the removal hearings. *Pereira*, 138 S. Ct. at 2115 (citations and quotations omitted). The third is that the document defined in the regulations is the same document as that defined in the statute: both refer to the start of removal proceedings, the definitions are almost identical,[3] and both refer to the notice to appear's function as a "charging document." *See id.* at 2128 (Alito, J., dissenting) (noting that a notice to appear under § 1229(a) "serve[s] primarily as a charging document" and that this characterization is reinforced by the requirements in § 1229(a)(1)). Moreover, as noted by *Pereira*, there is no reason why the function of a notice to appear should affect the information that it must include. *See id.* at 2115 n.7. The Court thus concludes that Congress unambiguously

---

[3] Indeed, as noted by the Government, the only difference between the requirements in § 1003.15 and the requirements in § 1229 is that § 1003.15 does not include any reference to the time and place of the initial hearing. Resp. [#35] at 18. This requirement was likely absent from § 1003.15 because § 1003.18 required time-and-place information be included "where practicable." Consequently, if the Government is correct in asserting the regulations no longer require notices to appear to include time-and-place information, the consequence of *Pereira*'s abrogation of § 1003.18 is that the requirements for notices to appear are *less stringent* now than they were prior to *Pereira*.

11

intended for notices to appear to always include information specifying the time and place of removal proceedings. Therefore, any regulation that conflicts with this unambiguous intent may not be given effect.

Furthermore, where a regulation "is inconsistent with the statutory language" or is "an unreasonable implementation of it," the regulation "will not control" over the statute. *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999). Here, the regulation the Government relies on to support the commencement of removal proceedings defines a notice to appear as a document that does not include information specifying the time and place of the removal proceedings. This regulation is inconsistent with the statute, which defines notices to appear used in the "[i]nitiation of removal proceedings" as including this information. *See* 8 U.S.C. § 1229(a). It is also an unreasonable implementation of the statute, as it would be "absurd and contradictory" to require a notice to appear to include charging information but not information on the date and time of the removal proceedings. *See Pereira*, 138 S. Ct. at 2115. Because the regulation is inconsistent with, and an unreasonable implementation of, the statutory text, the statutory definition of notice to appear must control over of the regulatory definition.

Thus, allowing a notice to appear that omits information specifying the time and place of removal proceedings to function as a charging document would run contrary to *Pereira*, the clear and unambiguous intent of Congress, and the rule that inconsistent regulations will not control over the statute authorizing those regulations. The Court therefore concludes that notices to appear must always include time-and-place information, including when they are used as charging documents for removal proceedings.[4] The Court now considers whether the failure to

---

[4] The Government argues the Supreme Court could not have intended for *Pereira* to apply to the removal proceedings that form the basis for illegal reentry prosecutions because if it had "intended a sea change in the criminal prosecution of individuals who illegally reenter the country, it would have said so." Resp. [#35] at 3. While

12

file a notice to appear including such information deprived the immigration court of jurisdiction in this case.

## B. The Jurisdiction of the Immigration Court.

As the Court concluded above, a notice to appear that fails to include the time and place of the removal hearing is not a notice to appear within the meaning of § 1229. *See Pereira*, 138 S. Ct. at 2110, 2113–14. The notice to appear filed against Valladares in the immigration court failed to include the date or time of his removal proceedings. Mot. Dismiss Indictment [#30] Ex. A at 1. Because the notice to appear failed to include the date or time of Valladares's removal proceedings, it could not properly serve as a charging document. And because no proper charging document was filed, jurisdiction never vested with the immigration court. 8 C.F.R. § 1003.14. Thus, under the plain text of the regulations, jurisdiction never vested with the immigration court. Consequently, Valladares's removal was void. *See Matter of Reitnauer*, 152 F.3d at 344 n.12.

The Government offers several arguments for why the plain text of the regulations is inapplicable here. The Court addresses each in turn.

First, the Government argues that the Supreme Court's decision in *Pereira* to remand the case instead of concluding the immigration court lacked jurisdiction demonstrates the Supreme Court did not consider a deficient notice to appear to be incapable of vesting jurisdiction in the immigration court. Resp. [#35] at 13–14; Sur-reply [#42] at 4–5. But the Supreme Court had no reason to consider the jurisdiction of the immigration court in Pereira's removal proceedings. The notice to appear at issue in *Pereira* was significant because it was unclear whether it triggered the stop-time rule, which had nothing to do with the whether the immigration court had

---

*Pereira* might have unexpected consequences for illegal reentry prosecutions, this Court is obligated to follow the directives of the Supreme Court's opinion in *Pereira* rather than its possible intentions.

13

jurisdiction. Furthermore, even if the Supreme Court *had* determined the immigration court lacked jurisdiction for the removal proceedings initiated by the 2006 notice to appear, such a determination would have done nothing for Pereira because he would still have been required to show that the stop-time rule was not triggered by the defective notice to appear. The Court is thus unpersuaded that the holding in *Pereira* contradicts § 1003.14's plain text requiring a proper notice to appear for jurisdiction to vest in the immigration court.

Second, the Government argues the administrative regulations should not be interpreted in a way that would limit "the clear authority granted to the immigration judge by Congress." Sur-reply [#42] at 3. The Government notes there is no statutory language addressing when or how jurisdiction vests with the immigration court and contends § 1003.14 is a "nonjurisdictional procedural rule." *Id.* Thus, under the Government's reasoning, the only rules governing the jurisdiction of the immigration courts are in 8 U.S.C. § 1229(a), which simply authorizes immigration judges to conduct proceedings for deciding the admissibility or removability of an alien. *Id.* at 2–3.

This argument is unsupported by the plaint text of the regulations or the cited case law. 8 C.F.R. § 1003.14 states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by [DHS]." As noted by the Government, 8 C.F.R. § 1003.14 states what conditions must be met to trigger the immigration court's authority to hear the case. *See* Resp. [#35] at 10. Because the regulations refer to the conditions that must be met before an immigration judge has authority to hear a case, the regulation speaks in "jurisdictional terms." *Cf. United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015) (*citing Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). Furthermore, given the paucity of jurisdictional language in the statute itself, if there was no jurisdictional rule

14

in the regulations the immigration court and the litigants before it would not be "duly instructed" as to when jurisdiction vested with the immigration judge. *See Arbaugh*, 546 U.S. at 515. The Court thus concludes § 1003.14 is a jurisdictional rule that must be met before an immigration judge may commence removal proceedings. Consequently, when a charging document is not filed as required by § 1003.14, jurisdiction never vests in the immigration court.

Third, the Government argues that an immigration judge may exercise jurisdiction where a defective notice to appear is also accompanied by a notice of hearing. Resp. [#30] at 20; *see Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009). This argument is unpersuasive for two reasons. First, *Gomez-Palacios* held these two documents could be used in conjunction to satisfy statutory notice requirements; it did not consider whether this practice was sufficient to vest jurisdiction in the immigration court. *Gomez-Palacios*, 560 F.3d at 359 (explaining that a notice to appear "need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be met . . . ."). Second, *Gomez-Palacios* was decided before *Pereira*, and as noted in a previous opinion from this district, the Supreme Court in *Pereira* expressly considered the argument put forth by the Government in this case and rejected it. *See Pereira*, 138 S. Ct. at 2113; *Pedroza-Rocha*, No. EP-18-CR-1286-DB, at 5–6. The Court therefore disagrees that a deficient notice to appear might nevertheless vest an immigration court with jurisdiction where it is accompanied by a notice of hearing, particularly since this exception appears nowhere in the applicable regulations.

Finally, the Government argues that even if the immigration judge did not have jurisdiction to commence removal proceedings, Valladares waived this challenge by failing to raise it before the immigration court or the Board of Immigration Appeals. Sur-reply [#42] at 5.

15

The Court determines that Valladares has not waived his challenge to the immigration court's jurisdiction. To begin, the rule that subject matter-jurisdiction can never be waived does not apply only to Article III courts. *See* Sur-reply [#42] at 5. Indeed, as the Supreme Court has explained, "[s]ubject-matter jurisdiction properly comprehended . . . refers to a *tribunal*'s power to hear a case, a matter that can never be forfeited or waived." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009). Because the immigration court is a "tribunal"—that is, a "court of justice or other adjudicatory body," *Tribunal*, BLACK'S LAW DICTIONARY (10th ed. 2014)—the definition announced in *Union Pacific* applies, and challenges to the immigration court's subject-matter jurisdiction may not be waived. Furthermore, the published opinions that concluded objections to the immigration court's jurisdiction can be waived involved challenges to a notice to appear based on its failure to give notice or on issues related to its service. *See, e.g., Chambers v. Mukasey*, 520 F.3d 445, 449–50 (5th Cir. 2008). Such jurisdictional challenges go to a court's lack of *personal* jurisdiction over the litigant, not a court's *subject-matter* jurisdiction over the case itself. *See Int'l Shoe Co v. State of Wash. Unemployment Comp. & Placement*, 326 U.S. 310, 320. Interpreting cases such as *Chambers* as involving the waiver of objections to the court's personal jurisdiction instead of its subject-matter jurisdiction also accords with the general rule that objections to personal jurisdiction may be waived while objections to subject-matter jurisdiction may not. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinée*, 456 U.S.694, 702–03. The Court therefore declines to exempt immigration courts from this general rule, particularly in the absence of any binding authority directing it to do so.

The Court thus finds no reason to depart from the plain text of the regulations to determine whether jurisdiction vested in this case. Because the notice to appear in this case failed

16

to include the time and date of the removal proceedings, a valid charging document was never filed. Pursuant to 8 C.F.R. § 1003.14, the failure to file a valid charging document means that the immigration court did not have jurisdiction to order Valladares's removal. Because jurisdictional defects render a judgment void, *Matter of Reitnauer*, 152 F.3d at 344 n.12, Valladares's removal from this country was void. Consequently, the Government cannot meet an element of illegal reentry under § 1326, and the indictment against Valladares must be dismissed.

## Conclusion

In conclusion, the Court finds that Defendant Edgar Alfredo Valladares's prior removal was invalid because a charging document was never filed sufficient to vest the immigration court with jurisdiction. Because a valid removal is a required element under 8 U.S.C. § 1326, the Government is consequently unable to prove an element of the crime charged, and the indictment against Valladares must be dismissed.

Accordingly,

IT IS ORDERED that the Defendant Edgar Alfredo Valladares's Motion to Dismiss the Indictment [#30] is GRANTED, and

IT IS ORDERED, ADJUDGED, and DECREED that the Indictment [#4] against Defendant Edgar Alfredo Valladares charging him with illegal reentry in violation of 8 U.S.C. § 1326 is DISMISSED WITHOUT PREJUDICE.

Signed this the 30th day of October, 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE